O
JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV10-6132 ODW (CWx) | Date | January 17, 2012 |
| Title | *Rigobeto Cardenas Jr. v. United Parcel Service, Inc., et al.* | | |

Present: The Honorable Otis D. Wright II, United States District Judge

| Sheila English | Not Present | n/a |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

Attorneys Present for Plaintiff(s):      Attorneys Present for Defendant(s):

Not Present      Not Present

**Proceedings (IN CHAMBERS):**    **Order Granting Defendant UPS Inc.'s Motion for Summary Judgment [36]**

Rigobeto Cardenas ("Plaintiff") alleges retaliatory discharge pursuant to the Fair Labor Standards Act ("FLSA") and wrongful termination in violation of California Public Policy against United Parcel Service, Inc. ("UPS" or "Defendant"). UPS now moves for summary judgment. [36] As discussed below, Defendant's Motion is GRANTED.

## I.   FACTUAL BACKGROUND

Plaintiff began working for UPS as a part-time pre-loader on or about January 15, 1992. (Compl. ¶ 8.) From April 2004 until his termination, Plaintiff worked as a utility package car driver at Beach Center in the Cerritos facility. (UF 1.) Plaintiff twice signed UPS's Honesty In Employment policy, which states that honesty is a core company value at UPS. (UF 2.) As a utility driver, Plaintiff was a member of the International Brotherhood of Teamsters. (UF 3.) The terms and conditions of Plaintiff's employment, including termination, were governed by a collective bargaining agreement ("CBA"). (UF 4.) UPS terminated Plaintiff's employment on September 25, 2009. (UF 8.) Plaintiff was paid for all hours worked and all accrued vacation time, as well as all wages due upon his termination. (UF 7.) Plaintiff filed his Complaint on August 17, 2010, and UPS moved for summary judgment on December 5, 2011. (UF 9.)

O
JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV10-6132 ODW (CWx) | Date | January 17, 2012 |
|---|---|---|---|
| Title | Rigobeto Cardenas Jr. v. United Parcel Service, Inc., et al. | | |

Article 37 of the CBA contains an "opt-in" provision which allows drivers to elect to be relieved from working over 9.5 hours a day. (UF 11.) Under Article 37, employees who opt-in can file a grievance to receive a penalty payment under the CBA if they are scheduled to work more than 9.5 hours of work per day for any three days in a workweek ("9.5 grievances"). (UF 12.)

During his employment, Plaintiff filed several 9.5 grievances with UPS and (allegedly) complained to management about safety concerns and overtime provisions within his collective bargaining agreement. In June 2009, Plaintiff prevailed on his 9.5 grievances and received payment from UPS. (Compl. ¶ 11-12). Plaintiff alleges he became subject to increasing harassment from his supervisor as a direct result of prevailing on these grievances.

Article 6, Section 4 of the National Master of the CBA provides that there must be a finding that an employee intended to defraud UPS if UPS relies solely on technology to terminate an employee. (UF 13.) "According to Article 28, Section 2 of the Western Union of the Supplemental Agreement of the CBA, 'proven dishonesty' may result in immediate termination." (UF 16.) On September 24, 2009, in the regular course of her duties, Security Supervisor Stevenson reviewed a Code Abuse report and discovered that Plaintiff had recorded eighteen delivery records as "Customer Requested Late" within a two-day period. (UF 27.) Stevenson became concerned with Plaintiff's records because UPS customers rarely request that time-sensitive packages to be delivered late. (UF 28.) As part of the ensuing investigation, UPS employee David Saunooke contacted all affected customers to determine if they indeed had requested their packages late; they had not. (UF 30.)

In conjunction with the investigation, on September 25, 2009, Stevenson and Saunooke interviewed Plaintiff. (UF 31.) During the interview, Plaintiff admitted that he had not in fact been authorized to make late deliveries but indeed used the "Customer Requested Late" code 18 times. (UF 32.) Based solely upon the investigation, Stevenson formed the good-faith belief that Plaintiff knew that he had used the "Customer Requested Late" code incorrectly and that he had committed proven dishonesty. (UF 33.)

O
JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV10-6132 ODW (CWx) | Date | January 17, 2012 |
|---|---|---|---|
| Title | *Rigobeto Cardenas Jr. v. United Parcel Service, Inc., et al.* | | |

At the time that Stevenson initiated the investigation, Stevenson had no knowledge of Plaintiff's 9.5 grievances or alleged safety complaints to his management. (UF 34.) Stevenson recommended that UPS terminate Plaintiff's employment solely because she believed his actions constituted proven dishonesty under Article 28, Section 2 of the Western Union of Teamsters UPS Supplemental Agreement. (UF 35.) As a result of the investigation, which included the interview with customers and the interview of Plaintiff, UPS discharged Plaintiff on September 25, 2009 for violating the CBA's proven dishonesty clause by falsifying his delivery records. (UF 36.)

## II. DISCUSSION

*Legal Standard*

Summary judgment is appropriate when, after adequate discovery, the evidence viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Evidence the court may consider includes the pleadings, discovery and disclosure materials, and any affidavits on file. FED. R. CIV. P. 56(c)(2).

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp v. Catrett*, 477 U.S. 317, 323-24 (1986). That burden may be met by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and identify specific facts that show a genuine issue for trial. *Id.* at 323-34; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1968). Only genuine disputes over facts that might affect the outcome of the suit will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248; *see also Aprin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001) (the nonmoving party must present specific evidence from which a reasonable jury could return a verdict in its favor). "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000).

O
JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV10-6132 ODW (CWx) | Date | January 17, 2012 |
|---|---|---|---|
| Title | *Rigobeto Cardenas Jr. v. United Parcel Service, Inc., et al.* | | |

It is not the task of the district court "to scour the record in search of a genuine issue of triable fact. Courts rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996); *see also Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) ("The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found.").

Finally, the evidence presented by the parties must be admissible. FED. R. CIV. P. 56(e). Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson*, 477 U.S. at 253.

*Defendant's Motion for Summary Judgment*

UPS attacks Plaintiff's claims for wrongful termination in violation of the Fair Labor Standards Act ("FLSA") and public policy, arguing they are not only preempted by the National Labor Relations Act ("NLRA"), but also fail on the merits. (Mot. at 10.)

NLRA Preemption

In passing the NLRA, Congress largely displaced state regulation of labor relations. *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 108 (1989) (*Golden State II*). While the NLRA contains no statutory preemption provision, the Supreme Court has recognized two types of preemption: *Garmon* preemption and *Machinists* preemption. *Idaho Bldg. and Const. Trades Council, AFL-CIO v. Wasden*, WL 6742502, 2 -3 (D. Idaho 2011) The first, *Garmon* preemption, upon which Defendant relies, precludes several kinds of state intrusions on the NLRA's "integrated scheme of regulation," including "potential conflict of rules of law, of remedy, and of administration." *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236 (1959).

O
JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV10-6132 ODW (CWx) | Date | January 17, 2012 |
|---|---|---|---|
| Title | *Rigobeto Cardenas Jr. v. United Parcel Service, Inc., et al.* | | |

  The purpose of *Garmon* preemption is to preserve the "comprehensive and integrated regulatory framework" Congress established in the NLRA. *Garmon*, 359 U.S. at 239-40. Under the NLRA, "Congress did not merely lay down a substantive rule of law to be enforced by any tribunal competent to apply law generally to the parties." *Garner v. Teamsters, Chauffeurs & Helpers Local Union No. 776*, 346 U.S. 485, 490 (1953). Rather, "Congress evidently considered the [National Labor Relations Board], with its centralized administration and specially designed procedures, necessary to obtain uniform application of its substantive rules and to avoid these . . . conflicts likely to result from a variety of local procedures and attitudes toward labor controversies." *Garmon*, 359 U.S. at 239-40.

  Of course, *Garmon* preemption does not apply when the activity a state seeks to regulate falls beyond the arguable reach of the NLRA. "The critical inquiry, therefore, is not whether the State is enforcing a law relating specifically to labor relations or one of general application but whether the controversy presented to the [ ] court is identical to (as in [*Garner*, 346 U.S. 485 (1953)]) or different from (as in [*Farmer*, 430 U.S. 290 (1977)]) that which could have been, but was not, presented to the Labor Board. For it is only in the former situation that a [ ] court's exercise of jurisdiction necessarily involves a risk of interference with the unfair labor practice jurisdiction of the Board which the arguably prohibited branch of the *Garmon* doctrine was designed to avoid." *Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters*, 436 U.S. 180, 197 (1978).

  Here, as UPS points out, "Plaintiff initially filed a charge with the NLRB that alleged the very claims at issue [here]." (Mot. at 12.) Specifically, Plaintiffs NLRB charge stated:

> In June 2009, Cardenas ... filed and succeeded in a union grievance against UPS alleging that UPS was not paying employees pursuant to its collective bargaining agreement. In September 2009, UPS terminated Plaintiff for a pretextual reason. The real reason was retaliation against Cardenas for filing a union grievance.

(Mot. at 12) (citation omitted). After filing the charge, however, Plaintiff voluntarily withdrew it and elected to pursue his claim here. (Mot. at 12) (citations omitted).

O
JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV10-6132 ODW (CWx) | Date | January 17, 2012 |
| Title | *Rigobeto Cardenas Jr. v. United Parcel Service, Inc., et al.* | | |

Plaintiff first argues the NLRB filing is immaterial since he withdrew the charge after his termination from UPS. As UPS argues, while the withdrawal of the NLRB charge is immaterial to summary judgment, "the fact that [Plaintiff] filed it with the NLRB in the first instance . . . reflects his understanding that the NLRA does indeed govern his retaliation claim." (Reply at 3.) While filing the charge with the NLRB reflects Plaintiff's understanding, that filing is not controlling. Rather, it is the substance of Plaintiff's claim here which determines its viability in this forum.

Plaintiff contends his retaliation claim should survive preemption because it is based on complaints to management about alleged "wage and hour violations" and "public health and safety." (Opp'n at 4.) Yet, other than the allegations of his complaint, which are decidedly insufficient at the summary judgment stage, Plaintiff offers no evidence that he ever made "public health and safety" complaints. As UPS points out, "Cardenas testified that he complained to management about his belief that the Atwood route had too much work assigned to it and was too large." (Reply at 4.) "These complaints related entirely to Cardenas's rights under the 9.5 provision of the CBA, not 'health and safety' issues. [citation] But in any event, the anti-retaliation provision of the FLSA makes it unlawful to discharge or [ ] discriminate against any employee for *filing a complaint* or *instituting any proceeding* under the FLSA, testifying or planning to testify in such a proceeding, or serving on an industry committee. 29 U.S.C. § 215(a)(3)." (Id) (emphasis added).

Mere complaints, as those alleged by Plaintiff do not implicate the FLSA. Plaintiff contends the "Ninth Circuit has a liberal view of what constitutes a complaint to the employer: 'so long as an employee communicates the *substance* of his allegations to the employer (e.g., that the employer has failed to pay adequate overtime, or has failed to pay the minimum wage), he is protected by *§ 215(a)(3)*.' " *Lambert v. Ackerly*, 180 F.3d 997, 1008 (9th Cir. 1999) (emphasis in original). But Plaintiff here offers no evidence that he complained about "wage and hour" and "public safety" violations. As UPS contends, the substance of Plaintiff's complaints concerned his rights under the 9.5 grievance. But, even had Plaintiff's complaints implicated the FLSA, Plaintiff also fails to establish a causal connection between the allegedly protected activity and the challenged termination. The Court thus finds that Plaintiff has failed to establish applicability of the FLSA and that his claims are preempted by the NLRA.

O
JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV10-6132 ODW (CWx) | Date | January 17, 2012 |
|---|---|---|---|
| Title | *Rigobeto Cardenas Jr. v. United Parcel Service, Inc., et al.* | | |

The Court also finds, based on the evidence as a whole, that Plaintiff has neither established a prima facie case of retaliatory discharge under the FLSA nor wrongful termination in violation of California public policy.

## III. CONCLUSION

Plaintiff's claims, as stated, are preempted by the NLRA.[1] And, in any event, Plaintiff fails to raise a genuine issue warranting a trial as to his claims.

**SO ORDERED.**

-- : 00

Initials of Preparer    SE

---

[1] The Court is cognizant that it previously denied UPS's motion to dismiss after finding that, as alleged, Plaintiff's claims are not preempted. At that stage, the Court had to assume the truth of Plaintiff's allegations. And, while Plaintiff relies on those allegations, they are woefully insufficient here. *See, e.g., Celotex Corp.*, 477 U.S. at 324 ("Rule 56(e) [] requires the nonmoving party to go beyond the pleadings and . . . designate 'specific facts showing that there is a genuine issue for trial.'") (citation omitted).